THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS BUFORD, Defendant-Appellant.

First District (2nd Division)   No. 81—171

Opinion filed October 26, 1982.

Steven Clark, of State Appellate Defender's Office, and Scott J. Szala, of Winston & Strawn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Raymond Brogan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant Dennis Buford was charged by indictment with rape, deviate sexual assault, armed robbery, unlawful use of weapons and armed violence. After a jury trial, defendant was found guilty of rape and armed violence. Judgment was entered on the verdict and defendant was sentenced to 60 years for rape and 30 years for armed violence. Defendant contends on appeal that: (1) the Illinois "rape shield" statute (Ill. Rev. Stat. 1979, ch. 38, par. 115—7) is unconstitutional as applied to him because it works a denial of his right to confrontation and his right against self-incrimination; (2) the same statute is also unconstitutional as a legislative infringement on the inherent powers of the judiciary; (3) the trial court committed reversible error when it allowed a letter which was purportedly authored by the defendant into evidence without proper authentication; (4) the prosecutor's closing argument contained misrepresentations of law, references to facts not in evidence and attacks on defense counsel's integrity, all of which denied the defendant his right to a fair trial; (5) the logical inconsistency of the jury's verdict demands a finding that the prosecution did not prove defendant guilty beyond a reasonable doubt, and (6) the sentences imposed were excessive and should be reduced.

On January 19, 1979, at approximately 4 a.m., Chicago police officer Michael O'Connor went to 1711 West 82d Street in response to a radio call. When he arrived with his two partners, they observed the complainant's son standing in a first floor apartment window and pointing towards the alley. As the officers walked through a courtway towards the alley, they heard someone crying. Officer O'Connor testified that he saw defendant and complainant lying in the snow. Defendant was on top of complainant and was holding a gun to her head. Officer O'Connor twice ordered defendant to "freeze," after which defendant tried to put his gun underneath the complainant's body, saying "tell him I am your boyfriend or else I am going to kill

you." When the officers took the defendant's gun and pulled him off of the complainant, they observed that his penis was outside of his pants. The complainant was dressed in a C.T.A. uniform, and her pants were down around her ankles. At the scene, in addition to the gun, the police recovered a satchel full of tools, a shoulder holster and $133 from the defendant.

Complainant testified that she left her apartment at 4 a.m. on January 19, 1979, to go to work as a C.T.A. bus driver. She passed the defendant on the street, and as she turned to look at him he pointed a gun at her. He grabbed her and forced her to the rear of the building, where he took $133 from her and threatened to kill her. Defendant then forced her to have oral and vaginal intercourse with him.

A medical examination conducted soon after the incident confirmed the presence of semen in complainant's vagina and in her throat.

Complainant testified that she had never seen defendant before January 19, 1979. She also testified that in February 1979 she received a letter from defendant which expressed sorrow over the incident and asked her to reconsider pressing charges. This letter was received into evidence over defense counsel's objection to its foundation.

Defendant testified that he had known complainant since 1972, having met her at 46th and Prairie Streets, an area of Chicago's south side which is frequented by prostitutes and is known as "The Stroll." He testified that he had paid complainant for sex almost weekly between 1972 and 1974. Defendant was imprisoned from 1974 to 1978, and he testified that they resumed their relationship after his release. Defendant testified that on January 18, 1979, he telephoned complainant and invited her to his house. When she arrived, they drank rum and smoked marijuana. Andre Davis, defendant's 14-year-old brother, testified that he was present for part of the time that complainant was in the house. Defendant testified that he and complainant had oral and vaginal intercourse that night, for which he paid her $25. He stated that he fell asleep, and that when he woke up complainant was gone and $143 of his money was missing.

Defendant testified that he left early for work on the morning of January 19 because of the inclement weather conditions. On the way to work, he stopped at complainant's house to retrieve his money. At first, she denied having taken the money, but she later produced $133 and gave it to defendant. He told her that $10 was missing. Defendant testified that complainant suggested that they go behind her house and have sex for the missing amount. They did so, and when

they laid down, defendant removed the gun he was carrying from its shoulder holster to make himself more comfortable. Defendant testified that when he heard the police he picked up his gun and ordered complainant to tell the police that everything was all right, but that when complainant began to cry, he knew that she had "set him up."

Prior to trial, the court granted the State's motion *in limine* prohibiting the defense from making any reference to the fact that complainant was convicted of solicitation for prostitution in 1972. The court based its ruling on the Illinois "rape shield" statute (Ill. Rev. Stat. 1979, ch. 38, par. 115—7), which provides: "In prosecutions for rape or deviate sexual assault the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused."

Defendant's first contention on appeal is that the "rape shield" statute is unconstitutional as applied to him because the exclusion of complainant's 1972 conviction for solicitation denied him the right to confront the witnesses against him. Defendant asserts that he was precluded from showing that, because complainant was convicted of mail fraud in 1978 and was on Federal probation at the time of the incident, she had a motive to fabricate her testimony in order to protect her probation. Defendant argues that complainant admitted that she knew that a conviction for any crime, including prostitution, would result in a revocation of her probation, and that her 1972 conviction was relevant to this issue. Defendant's brief does not clarify how a 1972 conviction might affect a probation which began in 1978, or how that earlier conviction is relevant to complainant's possible fear that her probation might be revoked.

Defendant asserts that the case of *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, is controlling. In that case, the defendant was charged with breaking into a bar and removing its safe. The safe was found near the home of Richard Green, who testified that he had seen and spoken with two men in the area where the safe was found on the day before the safe was discovered. Green later identified the defendant in a lineup as one of the men that he had seen, and stated that the defendant had been carrying a crowbar. Green was on juvenile probation for burglary at the time the safe was stolen and at the time of trial. Prior to trial, the court granted a protective order, pursuant to Alaska statute, which prohibited the defense from making any reference to Green's probationary status. On appeal, the defense contended that the application of the statute unconstitutionally restricted its right of cross-examination in that it made it impossible to show that Green, as a convicted burglar, might

have been subject to coercive police questioning at the time the safe was discovered near his home and that his identification of the defendant and his testimony might have been the products of police pressure.

The court noted that Green was cross-examined as to his state of mind at the time that the safe was found, and that when he was asked if he felt that the police might suspect him of the burglary he denied feeling any concern at all. The court found it doubtful that Green would have responded in the same way had he been subject to traditional cross-examination, and held that in this situation defense counsel should have been free to inquire into the possible bias of the witness.

In holding that the restriction placed on cross-examination in that case violated the confrontation clause, the court stated:

> "While counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness ***." *Davis v. Alaska* (1974), 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111.

The Illinois appellate court has twice rejected challenges to the constitutionality of the "rape shield" statute on the grounds urged by defendant. (*People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369; *People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346.) In the instant case, defendant asserts that the statute's prohibition against the admission of any evidence concerning the complainant's sexual conduct with parties other than the defendant made it impossible to show that complainant's testimony might have been a fabrication designed to protect her probation. The supreme court has stated that an inquiry into the witness's motive for testifying is an important function of the right of cross-examination. (See *Greene v. McElroy* (1959), 360 U.S. 474, 496, 3 L. Ed. 2d 1377, 1391, 79 S. Ct. 1400, 1413.) Such an inquiry has been made in the instant case. The jury heard the defendant's testimony regarding his relationship with complainant, and her presence in his apartment the night before the incident was corroborated by the testimony of the defendant's brother. Additionally, defense counsel asked complainant on cross-examination if she knew that a conviction for prostitution would result in a revocation of her probation, and she replied that she thought that it would.

Defense counsel also asked complainant if she knew the defendant and if she had ever frequented "The Stroll" and she replied in the negative to both questions.

In *Davis*, the court noted that the defense was confronted with a situation in which the jury simply could not be made aware of the defendant's theory of the case. In the instant case, the defense presented its theory of the case at length. Although the complainant's 1972 conviction might have added some weight to defendant's contention that complainant was performing an act of prostitution with the defendant at the time of his arrest, nothing in the complainant's arrest record could have been used to impeach her testimony conclusively. In Cornes, the court stated:

> "Complainant's past sexual conduct has no bearing on whether she has consented to sexual relations with defendant. The legislature recognized this fact and chose to exclude evidence of complainant's reputation for chastity as well as specific acts of sexual conduct with third persons in cases of rape and sexual deviate assault. The exclusion of this evidence does not prevent defendant from challenging or attacking complainant's credibility or veracity or otherwise utilizing cross-examination as an effective tool of impeachment. It merely denies defendant the opportunity to harass and humiliate the complainant at trial and divert the attention of the jury to issues not relevant to the controversy." *People v. Cornes* (1980), 80 Ill. App. 3d 166, 175, 399 N.E.2d 1346.

■ We find that the limitation placed on defendant's cross-examination of complainant in this case did not infringe upon defendant's right of confrontation.

Even if it were determined that the operation of the "rape shield" statute in this case worked a denial of defendant's right to confrontation, or that the statute was invalid on its face, that conclusion would not require reversal of defendant's convictions. The test of whether error is harmless or reversible is whether the reviewing court can say beyond a reasonable doubt that the error at trial did not contribute to the conviction. (See *People v. Smith* (1967), 38 Ill. 2d 13, 17, 230 N.E.2d 188.) When the evidence of the defendant's guilt is overwhelming, errors of constitutional magnitude are deemed harmless if a fair minded jury could not return a verdict of acquittal even if the error had not been committed. (*People v. Tilden* (1979), 70 Ill. App. 3d 859, 865, 388 N.E.2d 1046.) In the instant case, the evidence of defendant's guilt was overwhelming, and the impact of the evidence which defendant was prevented from introducing by the opera-

tion of the statute would have been negligible. Therefore, we cannot say that there is a reasonable doubt that defendant would not have been convicted even had the evidence been presented. Any error in this regard was therefore harmless.

■ Defendant next contends that the Illinois "rape shield" statute is an unconstitutional exercise of the judicial power by the legislature. The General Assembly has the power to create laws governing judicial practices when the laws do not unduly infringe upon the inherent powers of the judiciary or conflict with a rule of the supreme court. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 560, 413 N.E.2d 416.) While it is true that the legislature may not exercise those powers that are inherently judicial in nature (*People v. Jackson* (1977), 69 Ill. 2d 252, 256, 371 N.E.2d 602), the cases cited by defendant in support of this argument deal with situations in which legislation was enacted which restricted the power of the courts to render judgments (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713), or which came into direct conflict with a properly promulgated supreme court rule. (*People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602.) With regard to evidentiary matters, the legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact. (*Alton R.R. Co. v. Illinois Commerce Com.* (1943), 382 Ill. 478, 483, 48 N.E.2d 381.) In the instant case, the legislature has not interfered with the power of the courts to weigh and evaluate the evidence before them. The supreme court has stated that "[i]t is well settled that the legislature of a State has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof." (*People v. Wells* (1942), 380 Ill. 347, 354, 44 N.E.2d 32.) The statute in question is no more than a rule of evidence which precludes the introduction of a certain class of evidence when it is offered in a prescribed class of cases. We hold that the Illinois "rape shield" statute is not an unconstitutional legislative infringement on the powers of the judiciary.

■ Defendant also argues that the Illinois "rape shield" statute's requirement that any evidence of past sexual conduct between the complainant and the accused be presented to the court in an *in camera* offer of proof before it can be admitted at trial is unconstitutional in that it compels the defendant to testify against himself. Defendant advances no authority in support of the proposition that an *in camera* offer of proof violates the right of a criminal defendant to be free from self-incrimination. This provision of the statute merely requires that the court be satisfied that evidence of prior sexual conduct between the complainant and the defendant is actually available before

any attempt to impeach the complainant on that issue will be allowed. The obvious aim of this provision is to prevent baseless and harassing cross-examination of the witness. We hold that the requirement of an *in camera* offer of proof works no denial of defendant's right to be free from self-incrimination.

Defendant next contends that the court erred in admitting a letter into evidence which was received by complainant and purports to be from defendant. Complainant testified at trial that she received the letter in February 1979. It is undisputed that the letter bears the correct return address of defendant at Cook County jail. The text of the letter contains defendant's correct home address and refers to the incidents of January 19, 1979. The letter expresses sorrow at "what was supposed to have taken place," states that defendant was under the influence of P.C.P. at the time of the incident and asks complainant to forgive him and to reconsider pressing charges. Defendant argues that complainant's testimony was not a sufficient foundation for the authentication of the letter and that it should have been excluded from evidence for that reason.

In the case of *People v. Munoz* (1979), 70 Ill. App. 3d 76, 388 N.E.2d 133, this court addressed the question of the foundation necessary for the authentication of a private letter. In that case, the court admitted a letter into evidence which was purportedly authored by the defendant and sent to his girlfriend. The letter was signed "Campo," and had the defendant's correct jail address on the envelope. The defendant's girlfriend testified that "Campo" was the defendant's nickname. She could not authenticate the handwriting in the letter, and it was not contended that the defendant wrote the letter in his own hand. This court held that the letter was properly admitted, noting that authentication does not require that authorship by all others besides the purported writer be disproven. This court stated that the fact that the letter was signed with the defendant's nickname, that the letter appeared to come from the defendant's cell and that the letter contained information that was known to the defendant constituted a *prima facie* showing that would justify the court in allowing the jury to make the ultimate determination of authorship.

■ In light of our holding in *People v. Munoz* and the factual similiarities between that case and the instant case, we find that the trial court properly allowed the admission of this letter into evidence.

Defendant also argues that certain portions of the prosecution's closing argument were improper. In the case of *People v. Turk* (1981), 101 Ill. App. 3d 522, 533, 428 N.E.2d 510, the court held that the issue of the propriety of the prosecution's closing argument was waived

on appeal when the defendant's motion for a new trial merely characterized the prosecutor's remarks as inflammatory and prejudicial without setting forth the specific remarks complained of. In the instant case, defendant's motion for a new trial describes the remarks complained of as "prejudicial, inflammatory, and erroneous" and "designed to arouse the prejudices and passions of the jury" without setting forth any of the specific remarks referred to. Defendant's posttrial motion, therefore, is in the same form as the motion which was held to be insufficient to preserve the issue in *Turk*.

Supreme Court Rule 615(a) empowers a reviewing court to disregard the waiver of issues on appeal. The court may invoke the plain error rule in situations where the record clearly shows the omission of an error that substantially affected a defendant's rights. (*People v. Baynes* (1981), 88 Ill. 2d 225, 231, 430 N.E.2d 1070.) Our supreme court has stated:

> "A significant purpose of the plain error exception to the waiver doctrine is to correct any serious injustices which have been done to the defendant. It therefore becomes relevant to examine the strength or weakness of the evidence against him; if the evidence is close, there is a possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved. Thus, this court has held that where the evidence is closely balanced, a court of review may consider errors that have not been properly preserved for review." *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.

■ The evidence of defendant's guilt in the instant case is not so closely balanced, and the remarks of the prosecutor noted in defendant's brief were not so prejudicial, as to prompt this court to invoke the plain error doctrine.

■ Defendant also contends that the jury's verdict is so logically inconsistent that it casts doubt on the complainant's credibility, thus showing that defendant could not have been found guilty of rape beyond a reasonable doubt. Defendant was convicted of rape and armed violence but acquitted of armed robbery and deviate sexual assault. This court has stated that verdicts are so logically inconsistent as to contribute to a finding that the prosecution has not met its burden of proof when they cannot be construed as anything but an acceptance and a rejection of the same theory of the case. (*People v. Murray* (1975), 34 Ill. App. 3d 521, 532, 340 N.E.2d 186.) In the instant case, the offenses with which defendant was charged have dissimiliar elements, and the verdicts can be construed as a finding by the jury that

the State has proven that defendant forced the complainant to have vaginal intercourse at gunpoint, but that the State failed to prove that he stole her money or that oral sex occurred. We also note that the verdict may have reflected the jury's belief that the convictions for rape and armed violence would provide sufficient punishment to the defendant, and that "[t]he jury's historic power of lenity must prevail *** over the traditional doctrine concerning legally and logically inconsistent verdicts." (*People v. Murray* (1975), 34 Ill. App. 3d 521, 536, 340 N.E.2d 186.) We hold that the verdicts in the instant case are not so logically inconsistent as to create an inference that there was a reasonable doubt as to defendant's guilt.

■ Defendant's final contention is that the sentences imposed by the trial court were excessive and must be reduced. Our supreme court has stated that "the trial judge's decisions in regard to sentencing are entitled to great deference and weight. *** [A]bsent an abuse of discretion by the trial court a sentence may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The defendant contends that the trial court, aware of defendant's numerous prior convictions, did not give adequate consideration to defendant's rehabilitative potential. It is true that the court's range of discretion in fixing a sentence permits a recognition of the rehabilitative potential of the defendant. (*People v. Loyd* (1970), 125 Ill. App. 2d 196, 260 N.E.2d 63.) However, it can hardly be contended that defendant's potential for rehabilitation was not considered by the trial judge where, as here, the evidence concerning the violence of the crime committed and the defendant's extensive record of prior convictions speak so eloquently to that very factor.

This case presents an issue which has not been raised by the parties.

Defendant was convicted of rape and armed violence, receiving a sentence of 30 years for the latter conviction. Although the other divisions and districts of the appellate court have held that dual convictions based on a single physical act are improper under the authority of *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535, this court, relying on *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, has consistently held that dual convictions for armed violence and the predicate felony are proper even when only one physical act is involved, so long as the underlying act is a felony by statutory definition without reference to the use of a weapon in the commission of the act. (See *People v. Pearson* (1981), 102 Ill. App. 3d 732, 430 N.E.2d 304; *People v. Feierabend* (1981), 98 Ill. App. 3d 731, 424 N.E.2d 765; *People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d

1281.) In *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, our supreme court unequivocally held that convictions for armed violence and the predicate felony cannot be based on the same physical act. By order, the court subsequently denied petitions for leave to appeal and vacated the armed violence convictions in *People v. Feierabend* (1982), 91 Ill. 2d 561 and *People v. Pearson* (1982), 91 Ill. 2d 564, and the voluntary manslaughter conviction in *People v. Lynom* (1982), 91 Ill. 2d 563. In *People v. Mormon* (1982), 92 Ill. 2d 268, our supreme court explicitly held that the commission of a rape while armed is a single physical act which will not support dual convictions, and that the defendant's conviction for armed violence based on rape was properly vacated for that reason.

■ The conviction for armed violence in the instant case must likewise be vacated. Remandment for resentencing on the rape judgment is unnecessary because a separate sentence was imposed for each offense. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170-71; *People v. Reyes* (1982), 108 Ill. App. 3d 911.

For the reasons stated herein, the rape judgment is affirmed and the armed violence judgment is vacated.

Rape judgment is affirmed; armed violence judgment is vacated.

DOWNING and PERLIN, JJ., concur.