THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH COBBINS, Defendant-Appellant.

First District (3rd Division)   No. 84—2144

Opinion filed October 14, 1987.

James J. Doherty, Public Defender, of Chicago (Eve Moran, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant Joseph Cobbins was convicted of possession of a controlled substance with intent to deliver and of possession of cannabis with intent to deliver. The trial court sentenced him to three years on the former offense and to two years on the latter offense, the sentences to run concurrently. The jury also acquitted defendant of two counts of armed violence and two counts of felony unlawful use of a weapon.

On appeal defendant contends: (1) he was denied a fair trial when the State presented (a) prejudicial evidence of another crime in its opening argument and its case in chief and (b) irrelevant evidence of his prior acquaintance with the gang crimes officers who attempted to arrest him; (2) prosecutorial misconduct in closing arguments had a material effect on the jury verdict; (3) the State did not prove him guilty beyond a reasonable doubt and (4) the trial court denied him a fair trial by improperly stifling his opening argument to the jury.

The evidence adduced at trial revealed the following. Chicago police sergeant James Moran, assigned to the gang crimes south unit, was on duty at the unit's offices at 5101 South Wentworth, Chicago, on the morning of June 1, 1983, when Helen Crutcher, defendant's former girlfriend, came in and told him that she had been the victim of a battery and signed a complaint against defendant. Sergeant Moran noticed that Crutcher had swelling around one eye. At approximately noon or half past noon, he and two other officers in the gang crimes unit, James Bauer and James Fitzmaurice, went to defendant's home at 5953 South Indiana in Chicago. Upon arriving, Sergeant Moran and Officer Fitzmaurice went up to the second-floor apartment while Officer Bauer went to the rear of the building. Defendant's mother allowed Moran and Fitzmaurice into the apartment after they told her they wanted to speak to defendant about the incident between him and Crutcher. At that time, they noticed two other persons in the apartment whom they did not know. After Bauer reached the back of the

apartment building, he heard a window being raised on the side of the building and saw defendant lean out of a second-floor window and throw a bag up to the second-floor rear porch landing of the apartment across from his. Bauer then heard a "metal like sound hit the ground" and thereafter saw a gun lying in the open courtyard below the window. After defendant left the window, Bauer picked up the gun, a .45 caliber automatic, and the bag, which contained a large quantity of tinfoil packets and small manila envelopes. Bauer waited a few minutes to allow Moran and Fitzmaurice to gain entry into the apartment and called out to them. He then went around to the front of the building, met Moran and Fitzmaurice on the stairs and told them that he had seen defendant throw a bag of "dope" and a gun out of a window and to go back and get him. Bauer then ran to the rear of the building and, as he did so, heard someone running down the rear stairs. When he reached the base of the stairs, he saw defendant coming down and stop when he saw Bauer. Defendant then turned, ran across the first-floor landing and jumped over the railing. When defendant landed, he had a small black derringer in his hand and pointed it at Bauer. Bauer backed up, announced "Police," told defendant to drop the gun, and tripped over the support post of the rear stairwell. As Bauer was falling, he fired three or four shots at defendant, who then turned and started running away. Defendant jumped over the backyard fence and Bauer gave chase. After Bauer climbed the fence and ran behind defendant through a vacant lot, he saw the small derringer lying on the ground and retrieved it. Bauer fired a total of 14 shots at defendant during the chase. Defendant did not fire at Bauer. Thereafter, the police searched the area without success. Approximately an hour later, defendant surrendered to Chicago police officer Peck, in Bauer's presence, and was taken to the hospital for treatment of a bullet wound to his right arm.

Defendant testified that he was returning home from a friend's house at approximately 12:30 p.m. when he stopped to speak with a neighbor on the rear porch next to his. After talking with the neighbor, defendant ascended the rear stairs and saw Bauer with his gun drawn when he reached the second-floor landing. Defendant walked down the stairs and came upon Bauer, who blocked his exit and said "I'll kill you m____ f____." Defendant panicked and jumped over the bannister because he was scared of Bauer. Defendant denied being in his apartment and throwing anything out of the window from which Bauer claimed he saw him and which defendant identified as part of the dining room of the apartment. He also denied seeing a paper bag or a .45 automatic in Bauer's possession when he saw him at the bot-

tom of the stairs.

Chicago police officer Bolda interviewed defendant at Billings Hospital in the presence of Officer Peck. Bolda advised defendant of his *Miranda* rights, which defendant stated he understood. Defendant told Bolda he was at home when the police arrived and that he ran out the back door when they knocked on the front door. He also told Bolda that he kept on running when the man at the bottom of the stairs identified himself as a police officer. Defendant did not tell Bolda that he was not home when the police came to the apartment and that Bauer did not identify himself as a police officer. Defendant denied having thrown the bag with narcotics or the .45 caliber automatic out of the window and having a derringer in his possession that day.

Dorothy Wader, a police department chemist, tested the contents of 6 of the 61 foil packets in the paper bag and concluded they contained heroin. She also tested the contents of 17 of the 34 small manila envelopes in the paper bag and concluded they contained marijuana.

OPINION

Defendant first contends he was denied a fair trial by the State's references in its opening statement and its case in chief to Helen Crutcher's injuries. Specifically, he complains of the State's reference in its opening statement to the fact that Crutcher had a bloody nose when she first made the battery complaint against defendant and of Sergeant Moran's testimony that Crutcher had swelling around one eye when she returned to sign the formal complaint against defendant. Defendant contends the references to Crutcher's injuries violated the rule that evidence of other crimes cannot be used to show a defendant's propensity to engage in criminal conduct. He concedes that evidence of other crimes is admissible when relevant to the police investigation of the crime charged where it was an integral part of the defendant's arrest. However, he argues that under this exception, unnecessary details of the other crime have been held prejudicial. He notes that although the trial court denied his motion *in limine* to exclude evidence of the battery complaint, it did prohibit the State from going into the details of the battery. Moreover, he notes that the trial court denied his request to inform the jury that the battery complaint was eventually dismissed although, in other cases, it has been held reversible error to prohibit a defendant from informing the jury of his acquittal on an armed robbery charge brought out by the State in opening argument. (*People v. Mordican* (1976), 64 Ill. 2d 257, 356 N.E.2d 71.) Defendant asserts that the unnecessary details of Crutcher's injuries caused the jury to regard him as a bad person before he

presented any evidence.

The State responds that the isolated references to Crutcher's injuries were permissible to show the circumstances of the defendant's arrest and that the battery complaint was genuine. Moreover, it argues, even if they did constitute error, they were harmless beyond a reasonable doubt in view of the overwhelming evidence against defendant and the jury's partial acquittal of him.

■ Generally, evidence of other crimes is inadmissible to show guilt of the offense charged. (*People v. Harris* (1980), 91 Ill. App. 3d 112, 414 N.E.2d 755.) Such evidence is admissible if relevant for any other purpose other than to show propensity to commit crime (*People v. Hoppock* (1981), 98 Ill. App. 3d 58, 423 N.E.2d 1351), including when relevant to the police investigation of the crime charged where such investigatory procedures involved an integral part of the narrative of defendant's arrest (*People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179). However, introduction of unnecessary details of the other crime may be prejudicial. *People v. Diaz* (1979), 78 Ill. App. 3d 277, 397 N.E.2d 148.

■ We believe the facts of this case are governed by *People v. Mordican* (1975), 33 Ill. App. 3d 196, 338 N.E.2d 107, *aff'd* (1976), 64 Ill. 2d 257, 356 N.E.2d 71. Therein, the State in its opening statement referred to the defendant's arrest on an unrelated armed robbery offense and in its case in chief presented the testimony of one of the police officers who arrested defendant on that charge without informing the jury, as it knew, that the defendant had been acquitted of the charge. The supreme court held that the opening statement, coupled with the State's objection when the defendant attempted to inform the jury of his acquittal, was "plainly prejudicial" and warranted a new trial. The instant case is strikingly similar to *Mordican* and that similarity is not vitiated merely because there was only a civilian complaint against defendant rather than a formal charge. Here, as in *Mordican*, the defendant was prevented from informing the jury of the subsequent dismissal of the charge brought out by the State. Moreover, appellate court cases such as *People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179, cited by the State, do not compel a contrary conclusion.

■ Although *Mordican* requires us to hold that the references to the battery complainant's injuries in the State's opening argument and case in chief constituted error, we believe the defendant's acquittal on the armed violence and felony unlawful use of a weapon counts demonstrates that this error was harmless beyond a reasonable doubt. It is untenable to argue, and it would be illogical to hold, that the prohib-

ited references to the battery complaint prejudiced defendant on only half the charges against him. Surely, if the prohibited references had prejudiced the jury against defendant, it would have convicted him of all the charges. Defendant's partial acquittal demonstrates instead that these references had no effect on the jury's determination of his guilt on any of the charges and, thus, that they were harmless beyond a reasonable doubt.

■ Defendant next contends that the admission of irrelevant evidence of his prior acquaintance with Officers Moran, Bauer and Fitzmaurice of the gang crimes unit also denied him a fair trial. Specifically, he complains of the State's reference in its opening statement to the fact that Officers Bauer and Fitzmaurice knew defendant, had seen him before and knew where he lived, and Sergeant Moran's testimony that he knew defendant and his mother. He asserts that the State's cross-examination of him, wherein it elicited admissions that he knew Sergeant Moran and Officer Bauer and asked him the basis of his acquaintance with them, confirms its intent to prejudice him. He contends these actions were intended to invite speculation by the jury as to his criminal habits. Defendant argues that only Officer Bauer's prior acquaintance with him was material to his identification, since Bauer was the only one who saw defendant throw the contraband out of the window. Finally, he asserts that the State's repeated references to the police officers as "gang crimes specialists" was unnecessary and intended to stir the jury's hostility toward him since this was not a gang crime and no specialized investigative techniques were used.

The State asserts that the evidence that the arresting officers were previously acquainted with defendant does not necessarily imply he had a criminal record. It argues this evidence was necessary to establish that defendant knew who the officers were since they were in plain clothes when they went to his apartment. Moreover, the State argues, evidence of the prior acquaintance between defendant and the officers, coupled with his flight from Officer Bauer, establishes a consciousness of guilt. It further argues that it was permissible to show the unit to which the officers were assigned and that defendant cannot complain in view of his exhaustive cross-examination of Sergeant Moran as to the activities and purposes of the gang crimes unit.

We believe the State's introduction of evidence of the testifying officers' prior acquaintance with defendant was intended to serve no purpose but to prejudice the jury against him. As defendant notes, only the prior acquaintance between him and Bauer, whom he encountered on the rear stairs, was relevant and material to any issues in the case, *i.e.*, his identification and consciousness of guilt. Evidence that

an arresting officer was previously acquainted with the defendant does not necessarily imply a criminal record. (*People v. Rogers* (1940), 375 Ill. 54, 59, 30 N.E.2d 77; *People v. Stover* (1982), 89 Ill. 2d 189, 196, 432 N.E.2d 262.) However, there was no apparent reason for the State to argue and establish that Sergeant Moran and Officer Fitzmaurice, who, along with Officers Bauer and Peck, were described as "gang crime specialists," were also acquainted with defendant. (*Cf. People v. Stover* (1982), 89 Ill. 2d 189, 196, 432 N.E.2d 262 (no apparent reason existed to inquire of defendant's prior acquaintance with police officer unless State intended to imply prior criminality where, although knowledge of police officer's status was essential element of offense charged, defendant's knowledge thereof was already clearly established).) It is clear from the record that, on the day of defendant's arrest, Sergeant Moran and Officer Fitzmaurice did not come face-to-face with him before he was arrested. As such, evidence of their prior acquaintance with defendant could serve only to raise an inference in the jurors' minds that defendant had previously been involved in criminal conduct.

The State's repeated references to the officers as "gang crimes specialists" likewise were intended to prejudice defendant. As the State notes, it was permissible to elicit from the officers the unit to which they were assigned and from Sergeant Moran the duties and responsibilities of the unit. However, the State's repeated use of the phrase "gang crimes" and its repeated reference to the officers as "gang crimes specialists" far exceeded the proper use of this testimony. There were no allegations here that defendant was a gang member or that these offenses were part of gang activity. As such, the repeated references to "gang crime" could only serve to permit the jury to make such unwarranted and impermissible inferences.

■ Although this prosecutorial misconduct constitutes error, we are compelled to conclude that it was harmless beyond a reasonable doubt. As previously noted, defendant was acquitted on two of the four substantive charges against him: armed violence and felony unlawful use of a weapon. As such, we cannot perceive how defendant could have been denied a fair trial as to the charges on which he was convicted since all of the charges against him were resolved in one trial. The jury's partial acquittal of defendant conclusively demonstrates he was not prejudiced.

■ Defendant next contends that the State's improper closing arguments had a material effect on the jury's verdict. He cites five specific instances of improper argument: (1) the State shifted the burden of proof to him by arguing that he had not produced the "someone

else" he contended had thrown the contraband out of the window; (2) it suggested he was a professional criminal when it referred to his occupation as a "dope dealer," narcotics as the "tools of his trade" and his "wares" and, referring to the narcotics, stated, "This is what the man does for a living," and "[Y]ou didn't hear anyone ask Joe Cobbins what he did for a living ***, I think you know"; (3) the State misused a prior conviction to imply his guilt on the instant charges; (4) it bolstered the testimony of its key witness, Officer Bauer, by asserting there was "no lack of corroboration here"; (5) the State created an illusion of overwhelming evidence against him by asking the jury whether it believed him or the "Chicago Police"; (6) it characterized his defense as a "police frame" and accused his trial counsel of trickery and deception by arguing that "[a] lawyer can turn a rear window into a back window [sic] *** [h]e can put a defendant on a porch but not leaving the building"; and (7) the State exceeded the bounds of proper argument by referring to his testimony as an insult to the juror's intelligence and a slap in their faces.

The State responds that its arguments were proper since it is afforded great latitude in closing argument and that, even if improper, the comments did not prejudice defendant. It asserts that defendant failed to object to and thus waived any error in the argument that he failed to produce the "someone else" who threw the contraband out of the window. Alternatively, it argues, it was merely asking the jury to resolve the conflicting evidence in its favor, not shifting the burden of proof to defendant. The State notes that the trial court sustained defendant's objections to the arguments that he was a "dope dealer" and that narcotics were the "tools of his trade" and thus prevented any prejudice to him. The State asserts that the argument as to defendant's occupation was merely a request that the jurors use their common sense and conclude, from the testimony, that drugs packaged like the drugs recovered here are intended for street sale, and that defendant was guilty of possession with intent to deliver. It concludes that this argument was a reasonable inference from the evidence. The State further argues that the trial court prevented any prejudice to defendant from the improper reference to his prior conviction by sustaining his objection to it and that this is borne out by his partial acquittal. It contends the argument that the evidence was corroborated was proper because Officer Bauer's testimony was at least partially corroborated by Officer Fitzmaurice's testimony that the individual whom Officer Bauer was chasing had a weapon in his hand. It asserts that the argument as to whom the jury believed was merely a request that it assess the witnesses' credibility in light of: their testimony; the

side for which they testified; and all the evidence, including impeachment evidence. It asserts that the characterization of defendant's testimony as a "police frame" was a proper response to his argument to the jury that Officer Bauer lied to them or the grand jury about the .45 caliber automatic and to his intimation that the officer may have planted the drugs and weapons. As to its attributing defense counsel with deception and trickery, the State notes that defendant failed to object thereto and, alternatively, argues it was a proper response to his "police frame" argument which, prefaced as it was with the statement "[Y]ou know the truth when you hear it," asked the jury to remember and base its verdict solely on the evidence, not on counsel's statements.

The State is correct that defendant failed to object to its argument that he failed to produce the "someone else" who threw the contraband out of the window. Moreover, he did not allege this argument as error in his written motion for a new trial below and, thus, has waived it on appeal. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 221, 452 N.E.2d 77.

The cases defendant cites do not compel a contrary conclusion. In *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503, defense counsel objected to a similar argument and the trial court overruled the objection. The alleged error was thus preserved for appeal, unlike the case at bar. *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432, involved repeated argument by the State that the defendant had the burden of presenting evidence to create a reasonable doubt of guilt and that she had not done so. In all, defendant made 17 objections to the State's closing argument which the trial court sustained. The impropriety of the State's argument in *Weinstein* far exceeds that of the argument here.

Similarly, the trial court promptly sustained defendant's objections to the State's remarks that he was a "dope dealer," that narcotics were the "tools of his trade" and "his wares" and immediately instructed the jury to disregard them. It is well established that such action by the trial court prevents any prejudice to a defendant. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634; *People v. Cunningham* (1984), 130 Ill. App. 3d 254, 473 N.E.2d 506.

Defendant also objected to the State's argument, referring to the narcotics, that "this is what that man does for a living." The trial court did not, in form, sustain defendant's objection and instruct the jury to disregard the argument. However, it did so in substance. After defendant objected, the following exchange occurred between the

court and prosecutor:

> "THE COURT: Wait a minute, just a minute, Mr. Beuke. I told you there is no evidence of that.
>
> Mr. Beuke: Judge, we have a charge of possession with intent to deliver.
>
> THE COURT: Possession is one thing. All right. Possession is one thing. But, there has not been evidence of trade or—so, you may proceed."

The trial court's statements came immediately after it had sustained defendant's objections to the "dope dealer," "his tools" and "his wares" remarks. They were part of the same exchange between the trial court, defense counsel and the prosecutor. As such, they were sufficient to apprise the jury that the prosecutor's statements were improper and, thus, to prevent any prejudice to defendant.

■■ The trial court overruled defendant's objection to the State's argument, again referring to the narcotics in evidence, that "[Y]ou didn't hear anyone ask Joe Cobbins what he did for a living *** , I think you know." Although the trial court erred in overruling defendant's objection to this argument, inasmuch as it essentially was a repetition of the argument that "this [narcotics] is what" defendant did for a living, it cannot be said that, standing alone, this error so prejudiced defendant as to deprive him of a fair trial.

■■ Next, defendant contends that the State misused evidence of his prior conviction for robbery to imply his guilt on the instant charges. He asserts that while evidence of that conviction was properly admissible to establish a necessary element of the offense of felony unlawful use of a weapon, its use in the State's rebuttal argument was intended only to show his propensity to commit crime. The argument complained of was that "criminals get experienced" and that "he [defendant] does have that experience, he's been convicted before." Defendant concludes this misuse of his prior conviction coupled with the other inflammatory rebuttal statements was certain to cast him in an unfavorable light with the jury.

Defendant's objection to the first statement was overruled. However, his objection to the second statement was sustained. Since both statements were part of the same argument, when the trial court sustained defendant's objection to the second it cured any error in having allowed the first and prevented any prejudice to defendant from either statement.

■■ Defendant next contends that the State improperly bolstered the testimony of Officer Bauer by telling the jury that the evidence was corroborated when, in fact, it was not. He asserts that only Offi-

cer Bauer saw him with any of the contraband. He argues that such overstatements of the evidence are improper although subsequently corrected.

As the State notes, defendant ignores the testimony of Officer Fitzmaurice that, when he saw defendant jump over the fence behind his apartment building, he held a gun in his right hand. Although the argument may have been an overstatement, the fact that the evidence against defendant was at least partially corroborated demonstrates that it was not a complete misstatement of the facts. As such, the argument is distinguishable from that in *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503. Therein, the prosecutor claimed that defendant's hair, or hair just like his, was found on a piece of tape. The court held that the claim may have resulted in substantial prejudice to the defendant because the evidence showed only that the hair was microscopically identical to the defendant's and thus "could have" originated from him. (101 Ill. App. 3d 397, 402-03, 428 N.E.2d 903.) We find the misstatement of the evidence in *Giangrande* fundamentally different from that at issue here.

■■ Defendant next contends that the prosecutor improperly "created the illusion of overwhelming and antagonistic evidence" when it stated that it was "a balancing test" and asked the jury whether it believed the Chicago police or defendant. He asserts this argument was error because much of the police officers' testimony was not harmful to him and it improperly suggested to the jury that the State's impeachment evidence could be weighed as substantive evidence against defendant. The State responds that this argument merely asked the jury to weigh the credibility of the witnesses in light of all the evidence, including the impeachment evidence, offered against defendant.

This argument was proper and did not prejudice defendant. While joint reference to occurrence and impeachment witnesses is improper where it strongly suggests that the impeachment testimony is, itself, probative of an element of an offense, it is not improper where it serves only to contrast the credibility of the State's occurrence and impeachment witnesses with the defendant's. (*People v. Crossno* (1981), 93 Ill. App. 3d 808, 823, 417 N.E.2d 827.) The State argued whether the jury believed the Chicago police or defendant in response to his argument which accused the State's witnesses of lying. It did not suggest that the testimony of the police officers who testified for the State in rebuttal was probative of any element of any of the offenses charged against defendant. Rather, it merely contrasted the credibility of the State's witnesses with the defendant's. There was no impropriety in this argument.

■■ Defendant next contends that the State's rebuttal argument improperly characterized his defense as a "police frame" and an insult to jurors' intelligence and otherwise accused defense counsel of deception and trickery by telling the jury that "[a] lawyer can turn a rear window into a back window [*sic*] *** [h]e can put a defendant on a porch but not leaving the building." The State asserts that these arguments were proper responses to defendant's closing argument.

We agree with the State that its argument was proper and did not prejudice defendant. Unless based on some evidence, prosecutorial argument which suggests that defense counsel fabricated a defense or attempted to free his client through trickery or deception is improper. (*People v. Weathers* (1975), 62 Ill. 2d 114, 117-21, 338 N.E.2d 880.) However, it is also well established that a defendant cannot complain of prosecutorial remarks which are provoked or invited by his counsel's arguments. (*People v. Piscotti* (1985), 136 Ill. App. 3d 420, 441, 483 N.E.2d 363.) In his closing argument, defense counsel, *inter alia*, emphasized the lack of corroboration in the State's case and then stated, "[p]eople lie" and explicitly accused Officer Bauer of lying to the grand jury that he saw defendant throw a gun out of the window. The State's argument was thus a proper response to this argument which, in substance, accused the State of fabricating the evidence against defendant. This case is fundamentally different from those cited by the defendant, *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41, and *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880, in which there is no indication that the State's improper remarks were made in response to defense counsel's argument.

In summary, we find that the State's allegedly improper arguments were either waived as grounds for appeal, cured by the trial court's sustaining of defendant's objections thereto or proper under the rules pertaining to prosecutorial argument.

■■ Defendant next contends he was not proven guilty beyond a reasonable doubt by competent evidence. He claims that the verdicts of conviction and acquittal are logically inconsistent because they reflect both a rejection and an acceptance of the State's theory of the case "based on a single transaction as testified to by a single witness." He asserts that the State's case rested entirely on Officer Bauer's testimony while his rested entirely on his testimony. As such, defendant argues, if Officer Bauer was credible then he was guilty of all the charges, but if, on the other hand, defendant was credible then he was innocent of all the charges. Defendant asserts that logically inconsistent verdicts contribute to a finding that the State has not met its burden of proof where, as here, such verdicts can only be construed as an

acceptance and a rejection of the same theory of the case. Defendant concludes that the inconsistency of the verdicts reflects the significant weaknesses in the competent evidence against him, which were overcome only by the State's improper closing arguments.

The State counters that the jury verdicts are neither logically nor legally inconsistent and that only legal inconsistency, which is absent here, requires a reversal. It argues that the evidence was sufficient to prove defendant guilty of the offenses of possession with intent to deliver. However, it argues, the evidence was insufficient to prove him guilty of the armed violence offense, which required proof that defendant was armed with a weapon when he had either actual or constructive possession of the narcotics, because Officer Bauer did not see defendant with a weapon when he saw him with the bag of narcotics. Moreover, the State argues, the jury could have found defendant not guilty of the unlawful use of a weapon offenses because it may have concluded that, pursuant to the jury instruction, he was "on his land" or "in his abode" when he was armed with the derringer.

Logical inconsistency between verdicts involves the acceptance and rejection of the same theory of the case for the State or the defense, and may exist between a conviction of one crime and an acquittal of another, where both arise out of the same facts but have different essential elements. (*People v. Murray* (1975), 34 Ill. App. 3d 521, 532, 340 N.E.2d 186.) If logically inconsistent verdicts cannot be construed otherwise, their inconsistency is a factor contributing to the existence of a reasonable doubt of guilt to be considered upon review of a contention that a defendant was not proven guilty beyond a reasonable doubt. However, verdicts that are only logically inconsistent do not *per se* require a reversal since it may be determined upon review that there was, nonetheless, sufficient evidence to support the defendant's conviction. 34 Ill. App. 3d 521, 532, 340 N.E.2d 186.

Defendant was charged with one count each of possession of marijuana and possession of a controlled substance, heroin, with intent to deliver under sections 5 and 401 of the Cannabis Control Act and the Controlled Substances Act, respectively. (Ill. Rev. Stat. 1981, ch. 56½, pars. 705, 1401.) Defendant was also charged with two counts each of felony unlawful use of a weapon and armed violence under sections 24—1 and 33A—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, pars. 24—1, 33A—2.) The armed violence offenses were predicated on the concurrent felony violations of the Cannabis Control Act and the Controlled Substances Act. That is, a conviction for armed violence required a finding that defendant had violated either sections 5 or 401 while armed with a dangerous weapon, *i.e.*, the .45 automatic,

the .22 derringer, or both. (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2.) A conviction for felony unlawful use of a weapon merely required a finding that defendant had carried or possessed and concealed on or about his person while not on his land, in his abode or a fixed place of business the .45 automatic, the .22 derringer, or both within five years of a prior felony conviction or release from prison after such conviction. (Ill. Rev. Stat. 1981, ch. 38, pars. 24—1(a)(4), (a)(10), (b).) The possession offenses were not predicated or dependent on either the armed violence or unlawful use of weapon offenses.

   ■■ Defendant's conviction of the possession with intent to deliver charges and his acquittal on the armed violence and unlawful use of weapon charges do not require a reversal of the former. Specifically, we do not believe that these verdicts must be construed only as an acceptance and rejection of the same theory of the case and thus as logically inconsistent. Simply put, given the dissimilar elements of the two sets of charges, the verdicts can reasonably be construed as a finding by the jury that the State proved beyond a reasonable doubt the possession with intent to deliver charges but not the armed violence and unlawful use of weapons charges. (See *People v. Buford* (1982), 110 Ill. App. 3d 46, 55-56, 441 N.E.2d 1235.) Moreover, the verdicts may reflect the jury's belief that conviction of less than all the charges would sufficiently punish defendant. (110 Ill. App. 3d 46, 56, 441 N.E.2d 1235.) It is well established that the jury's historic power of lenity prevails over traditional doctrine concerning inconsistent verdicts. 110 Ill. App. 3d 46, 56, 441 N.E.2d 1235; *People v. Murray* (1975), 34 Ill. App. 3d 521, 536, 340 N.E.2d 186.

   ■■ Moreover, we agree with the State that defendant's argument that the jury must have completely believed Officer Bauer in order to convict him of any of the charges would eradicate the jury's role in our system of criminal justice. We believe the rule that it is primarily the function of the trier of fact to determine the credibility of witnesses and the weight to be given the evidence (*People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285) recognizes that a jury need not accept or reject all of a witness' testimony but may attribute different weight to different portions of it. Beyond that, we will not speculate as to the jury's reasoning in finding defendant guilty of less than all of the charges against him. (See *People v. Vilt* (1985), 139 Ill. App. 3d 868, 875, 488 N.E.2d 580, *cert. denied* (1986), 479 U.S. 864, 93 L. Ed. 2d 148, 107 S. Ct. 219.) Finally, we note that a conviction will not be set aside unless the evidence is so palpably contrary to the findings or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of guilt (139 Ill. App. 3d 868, 875, 488 N.E.2d 580), which is

not the case here.

■■■ Next, defendant asserts the evidence was insufficient to convict him because: Sergeant Moran and Officer Fitzmaurice did not know how many people were in the apartment at the time of the incident; there was no evidence of who or what was in the dining room, which defendant identified as containing the window from which Officer Bauer allegedly saw him throw the contraband; defendant neither slept nor kept any of his personal possessions in the dining room; defendant denied being in the apartment and neither Sergeant Moran nor Officer Fitzmaurice saw him inside. Defendant asserts this evidence might have led the jury to acquit him of all the charges but for the State's improper closing arguments.

The State cites the evidence that Officer Bauer saw defendant throw the paper bag from the apartment window, that the contents of the bag were tinfoil packets and small manila envelopes later found to contain heroin and marijuana, respectively, and that drugs sold on the street are packaged in this manner as sufficient to sustain defendant's convictions for the possession with intent to deliver offenses.

Officer Bauer positively identified defendant as the person he saw throw the paper bag out of a window which defendant identified as being in the dining room of his apartment. That Sergeant Moran and Officer Fitzmaurice did not know how many people were in the apartment and did not see defendant in the apartment do not create a reasonable doubt of guilt. The officers did not testify that they could see the dining room of the apartment from the bedroom into which they were led by defendant's mother. Moreover, Sergeant Moran testified that they did not go into every room of the apartment. That defendant denied being in the apartment and claimed he ran away because Officer Bauer pointed a gun at and threatened to kill him does not create such doubt either. The credibility of witnesses is primarily for the trier of fact. (*People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285.) Moreover, the jury could have properly inferred from defendant's flight a consciousness of guilt inconsistent with his claim of innocence. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 328, 445 N.E.2d 521.) Finally, that defendant neither slept nor kept his personal possessions in the dining room was totally irrelevant to the issue whether he had thrown a bag of narcotics out of a window which he identified as part of that room. Thus, the evidence was sufficient to sustain a finding of guilt beyond a reasonable doubt and we find meritless defendant's contention that the State's improper remarks in closing argument persuaded the jury to convict him despite the insufficiency of the competent evidence against him.

Finally, defendant contends that the trial court denied him a fair trial by improperly "stifling" his opening statement to the jury. He asserts that the trial judge's comments interfered with his counsel's advocacy on his behalf and set a hostile tone at a delicate stage in the trial. Specifically, defendant complains of the following remarks by the trial court during his counsel's opening statement:

"MR. LEVIN: The evidence will show *** that [defendant] was the individual *** shot by the police *** Officer Bauer shot fourteen shots at [defendant], wounding him on the first time, shooting him not in the leg, or in the side, but through the arm, and shooting him like a dog or animal. ***

THE COURT: Mr. Levin, that statement is inappropriate in an opening statement. Just what you expect the evidence will show.

MR. LEVIN: That is what I believe the evidence will show, Judge.

THE COURT: No, I don't want any closing argument. Just outline what you expect the evidence will show.

MR. LEVIN: The evidence I believe will show that the police *** did not come to just arrest [defendant], they came there with their guns drawn, that Officer Bauer chased this man and fired fourteen shots.

THE COURT: You already said that, Mr. Levin.

MR. LEVIN: I know, Judge. May I continue, sir?

THE COURT: I mean don't repeat your argument.

MR. LEVIN: No, I am trying—

THE COURT: Just outline the evidence. Don't repeat it. I have heard fourteen shot [sic] now three or four times.

MR. LEVIN: Well, Judge, I just don't—I am trying.

THE COURT: Well, you said fourteen shots three or four times. You may continue. Have you concluded? Have you concluded?

MR. LEVIN: Yes."

Defendant contends that, while his counsel could have continued his opening statement, he was effectively prevented from doing so to avoid arousing more hostility toward defendant and that his counsel's involuntary decision to stop prejudiced defendant by leading the jury to believe that he had nothing more to say. He concludes the trial court's unreasonable interruptions show a total disregard for his right to a fair trial.

The State responds that because defendant objected to the court's remarks only at trial and did not include them in his motion for new

trial below, he has waived them on appeal. Alternatively, it asserts the trial court's remarks accurately reflected the law on the purposes of an opening statement and did not deny defendant the right to make such a statement or otherwise prejudice him. The State asserts that defense counsel's remark that the police shot defendant "like a dog or animal" and his repetition of the number of shots fired by Officer Bauer were inappropriate in an opening statement and better suited to a closing argument. Because the trial court told defense counsel he could continue with his statement before it asked him whether he had finished, the State asserts, the court did not force him to cut short his argument; instead, counsel did so of his own volition.

Initially, we note defendant failed to include this issue in his motion for a new trial and has thus waived it on appeal. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 221, 452 N.E.2d 77.) However, because of the fundamental importance of a fair trial and the practical difficulties in objecting to the conduct of the trial court, the waiver rule is applied less rigidly when the judge's conduct is the basis of objection; thus, we may consider the issue on its merits. *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 936, 449 N.E.2d 568.

■■ ■ The purpose of an opening statement on behalf of a defendant is to apprise the jury of the nature of the defense and the evidence to be offered to sustain it. (*People v. Fuerback* (1966), 66 Ill. App. 2d 452, 456, 214 N.E.2d 330.) It should contain an outline of the facts which a party in good faith intends to prove and should not be a long, narrative, evidentiary recitation (*People v. Hampton* (1979), 78 Ill. App. 3d 238, 243, 397 N.E.2d 117) or counsel's argument to the jury (*People v. Hardy* (1979), 70 Ill. App. 3d 351, 359, 387 N.E.2d 1042). Its scope and latitude is largely within the discretion of the trial court; however, a defendant has the right to have his defense counsel present his opening statement without unreasonable restriction. (*People v. Hampton* (1979), 78 Ill. App. 3d 238, 243, 397 N.E.2d 117.) While the trial court has wide discretion in the conduct of trial, it must not make comments or insinuations indicative of an opinion on the credibility of a witness or the argument of counsel. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 936, 449 N.E.2d 568.) Prejudice to the defendant must appear to be the probable result of the trial court's remarks or they must have been a material factor in the defendant's conviction to constitute reversible error. 114 Ill. App. 3d 933, 937, 397 N.E.2d 117.

■■ The trial court's remarks to defense counsel during his opening statement did not deny defendant a fair trial. Given that an opening statement is not argumentative in nature, we agree with the trial

court that the remark that defendant was shot "like a dog or animal" was inappropriate in an opening statement. Because such a statement is intended to be a mere outline of the evidence to be presented and not a long exposition of the facts, we cannot say that the trial court abused its discretion when it admonished defense counsel not to repeat his remarks as to the number of shots fired by Officer Bauer. That the trial court's remarks that it had heard "fourteen shots three or four times" were somewhat intemperate does not compel a contrary conclusion. To the extent that defense counsel repeated this statement, he was no longer outlining the evidence but attempting to impress on the minds of the jurors the force used by the police in trying to capture defendant. Moreover, we do not believe that the exchange between defense counsel and the court was so harmful to defendant that his counsel was "practically" forced to cease his statement to avoid further prejudice to defendant. After the trial court again told defense counsel that he had said " 'fourteen shots' three or four times," it also told him he could continue and twice asked whether he had concluded. Given the trial court's demonstrated receptiveness to allowing defense counsel to continue, he cannot now complain of his own decision to discontinue his statement. Finally, it is not at all clear that the trial court's remarks resulted in any prejudice to defendant or that they materially affected the outcome of the trial given the jury's acquittal of him on half of the substantive charges against him.

The case cited by defendant, *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99, is inapposite. Therein, the trial court characterized defense counsel's routine evidentiary objections as " 'speeches'," held that " 'the speech is stricken' " and advised counsel not " 'to make any speeches' " to the court in front of the jury at least 16 times during the trial. The supreme court held that it was not consistent with the trial court's duty to guarantee a fair trial for it "to constantly disparage counsel and to berate him for" nothing more than his efforts to fulfill his duties as an advocate. (24 Ill. 2d 295, 301, 181 N.E.2d 99.) The trial court's remarks to defense counsel here were not as numerous nor as egregious as those in *Lewerenz*.

For all of the foregoing reasons, the judgment of conviction entered by the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and RIZZI, J., concur.