THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HICKMAN, Defendant-Appellant.

(No. 70-205;

Fifth District—January 17, 1973.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Charles D. Sheehy, Jr., both of Model District State's Attorney's Office, of counsel,) for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Joseph Reed and Robert Hickman were indicted on charges of attempt-burglary and of possession of burglary tools. The trial resulted in jury verdicts of guilty against both men on both counts of the indictment. After a probationary investigation, defendant Reed was sentenced to five years probation. Defendant Hickman was denied probation and was sentenced to a term of one to five years in the Illinois State Penitentiary.

The defendant claims initially that he was not proven guilty beyond a reasonable doubt. In presenting its case the prosecution called two witnesses. The first, Mrs. Betty Davis, was the manager of the store at which the attempt was made. She stated that she had no personal knowledge of the attempt as she was on vacation at the time. Her testimony consisted of a description of the location and physical layout of the store. No question is raised as to the accuracy or credibility of this witness.

The chief witness for the State was Detective Sergeant James Borsis of the East St. Louis Police Department. He testified to the following: He and Officer Stanis were on duty in an unmarked car when they received a call over the radio reporting a suspected prowler in the area of the Alden Catalog Store. As they drove up a car was driving away on Thirty-third Street. They spoke to the person who called the police and made a check of the premises. They found no signs of any attempted forced entry. Returning to their car they set up a surveillance of the store. After a few minutes a car parked on 33rd Street facing south and a Negro got out and went to a window on the west side of the building. He was soon joined there by another Negro who came from the car. From the stake-out point, south of State Street, he could see along the entire west side of the building. Officer Stanis was on the driver's side and Officer Borsis on the passenger side with the auto facing north.

One man went across the street and crouched behind some bushes each time an auto would drive by. The other man was busy ripping pieces of wood covering from the window and carrying it to the rear of the store. The men changed positions on occasion. After returning to the auto for a few minutes, the men once again assumed their original positions. While he could not identify their facial features from the distance, he could note their clothing. He also noted that one of the men carried something in his hand but he could not tell what it was. After a while both men returned to the auto once more. This time they began to drive south on 33rd where they were stopped by Officers Borsis and Stanis.

The occupants offered no resistance. A standby car was radioed, which came and took the men, identified as Reed and Hickman, to the police station. Officers Borsis and Stanis then searched the auto and found an old open suitcase on the floor of the back seat with several tools in it. After the other policemen took the defendants away, he and Stanis returned to the store and discovered pry marks on the window and pieces of wood on the ground. Pieces of material from the covering over the window were found in the rear of the building. He took a tire iron found in the suitcase and compared it with the pry marks on the window. The marks matched the size of the end of the tire iron. He identified Reed as the original lookout and Hickman as the person at the window first and as the one carrying the unidentifiable object in his hand.

The defense presented one witness, the co-defendant Joseph Reed. His testimony was that he and Hickman were employed at the Chevrolet assembly plant in St. Louis. On the night in question he and Hickman left the plant at 10:30 P.M., instead of their normal 1:00 A.M. quitting time because of an equipment breakdown. After stopping at Hickman's house they went to the "Player's Lounge" where they met two girls. He stated that they arranged to meet the two girls later at the Jett Building which is across the street from the Alden store. Upon arriving there, they parked the car and Hickman got out to go to the Jett Building to look for names. They then walked around the area, on both sides of the street, looking for the girls' car. After a few minutes they got back in the car and began to drive off when they were arrested.

During the course of Reed's testimony, the defense counsel sought the introduction of certain photographs taken at the scene of the alleged crime. It was a series of nine photographs taken of the store and its surroundings and marked as defendant's Exhibit 1 through 9. In order to lay a foundation upon which to request the admission of the photos into evidence, counsel questioned Reed about the photos.

After cross-examination of the witness, which was devoid of any questions on the photos, Reed's attorney offered into evidence defendant's

Exhibits 1 through 9, excluding No. 3, "as pictures of the scene of the purported map and scene of the Alden's building". No further qualification or purpose was suggested by counsel. The State questioned Exhibits 1 and 2 on the ground that they did not necessarily show the door and window as they were at the time of the offense a year before since they were taken the morning of the trial. But as far as showing the location of the doors and windows there was no objection. The trial court admitted them under that condition.

The photographs submitted to the court on appeal are not the original photos submitted into evidence and viewed by the jury in this case. The appellant's brief states that the original photos were "lost", and that these pictures represent accurately what the originals did, citing a letter from the trial attorney to that effect. No reference is made as to which stage of the proceedings the pictures were lost, or in whose custody they were last, and no reference is made to the chain of possession of the photographs.

■■ The jury heard the testimony of the Officer and had the original photographs, as well as hearing counsel's argument to the effect that the photographs impeached the testimony of the Detective Sergeant with reference to the officer's line of vision of the side of the building, and it returned a guilty verdict. They chose to believe the testimony of the police officer in spite of the photographs. In this we find no error. Thus we need not discuss the substitution of the second set of photographs.

■■ The defendant next argues that error was committed in that the State failed to produce several potential witnesses to the crime. He cites *People v. Williamson* (1966), 78 Ill.App.2d 90, 223 N.E.2d 453, to the effect that a negative inference arises, when the State fails to produce a witness, that the witness would have given testimony against the State. But the case goes on to say, "The first premise for the negative inference against the State is that the available witness must have such knowledge of the disputed event as to demand an explanation for his absence." (223 N.E.2d at 456.) In the present situation, the testimony to be offered by Officer Stanis, Officer Borsis' partner in the police car that night, would be merely cumulative in nature and it is not necessary to call two police officers who are witnesses to the same occurrence. See *People v. Jones* (1964), 30 Ill.2d 186, 195 N.E.2d 698, wherein the court held that the State was not obligated to produce every witness to a crime and the failure to produce a witness does not automatically give rise to a presumption that his testimony would be unfavorable to the prosecution. Also, the defendant here fails to show anywhere in the record that the testimony of the people making the original report to the police would be anything but cumulative. In the absence of such a showing, they need

not be called. No error occurred in the failure of the State to produce all potential witnesses. Another argument put forth by the defense is that the police should have submitted the tools and debris for fingerprinting analysis. Officer Borsis testified that he checked the premises at his arrival on the scene and found no marks of attempted entry, that he observed the defendant at the window, that the defendant carried some debris to the rear of the building, that after the arrest the two police officers found fresh marks on the frame and compared the marks to the end of the tire tool and found them to be identical. The tools would have the defendant's fingerprints on them through normal use, so submitting them to analysis would be valueless. Since Officer Borsis testified that he saw the defendant carrying the debris, the fingerprints would be merely cumulative evidence and there is no necessity for such evidence. The jury believed the officer's testimony on this point and we find no error in the failure to obtain a fingerprint analysis. *People v. Robinson* (1967), 105 Ill.App.2d 57, 245 N.E.2d 137; *People v. Jones* (1964), 30 Ill.2d 186, 196 N.E.2d 698.

Defendant's arguments on the foregoing points, thus do not lead us to agree that the State failed to prove defendant guilty beyond a reasonable doubt.

The defendant also argues that if the conviction were correct, the sentence of one to five years in the state penitentiary is excessive under the circumstances. No question is raised as to the minimum sentence as Hickman has already served thirteen months of the original sentence.

■■ In view of two previous burglary convictions, the second occurring while on parole, we cannot say that there was an abuse of discretion in determining that a maximum of five years was proper, despite a showing of gainful employment and other factors which indicate a possibility of rehabilitation. Under the circumstances the protection of society requires that the parole authorities be given a broad discretion.

The judgment is affirmed.

CREBS and G. MORAN, JJ., concur.