THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL B. HAMPTON, Defendant-Appellant.

First District (5th Division)   No. 78-1072

Opinion filed November 2, 1979.

Hall Triplett, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Diane Michel Powell, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of burglary and sentenced to two to six years imprisonment. On appeal, he contends that (1) he was not proved guilty beyond a reasonable doubt; and (2) he was denied a fair trial by objections to and interruptions of defense counsel's opening statement.

It appears that on July 14, 1976, at approximately 2:20 a.m., a break-in occurred at the Walgreen Drug Store located at 7901 Halsted Street, in Chicago. The front window was broken and a number of items of merchandise were missing from the display cases and open shelves inside the store.

A police officer testified that while he and his partner were traveling north on Halsted Street in their patrol car, approximately one-half block south of Walgreen's, he heard the sound of breaking glass; that after approximately five to six minutes, while traveling at an estimated speed of five to six m.p.h., he observed two men emerge from Walgreen's carrying what appeared to be black garbage bags in their hands; that he saw the men run south on Halsted toward the alley behind the drug store and then run east down the alley; that when the squad car followed them into the alley, both men dropped the bags near an underground staircase; that one of these men escaped, but the other (defendant) was placed under arrest; and that the police found a camera, film, alcohol, and electric clippers in the bags. On cross-examination, the officer stated that he did not dust the bags or merchandise for fingerprints nor did he examine defendant's hair for glass fragments.

John Poole, manager of Walgreen's at the time of the burglary, identified the items recovered by the police as store merchandise. He also testified that 14 other items were also missing after the break-in.

Defendant's brother (Ashley Hampton) and Pracilla Thompson (Ashley's sister-in-law) testified for the defense. Both stated that shortly before defendant was arrested they were riding in a car on Halsted Street when they saw the broken window in Walgreen's and observed defendant standing near the Glass House Lounge, a tavern separated from Walgreen's by an alley; both stated they saw him there again a few minutes later, as they were walking to the tavern. Ashley Hampton also testified that as he walked towards the tavern, he observed people running in and out of Walgreen's; that later, when he left the lounge, he followed defendant into the alley; that defendant was drunk at that time and was urinating in the alley when he (Ashley) saw a police car turn into the alley; that he then saw someone run "up out of the alley" carrying something in his arms; that the police car stopped in the alley behind Walgreen's and one officer started shooting as the second officer

approached defendant; that he saw a second man come up from the basement located behind Walgreen's and run past the police; and that the police then took a bag from the stairwell and arrested defendant.

Defendant testified on his own behalf that he was watching a portable hot dog stand for a friend in front of Walgreen's when he saw a man kick in the window of Walgreen's as two other men stood nearby; that these men walked to the other side of Halsted Street and then returned and entered the store; that they later exited, carrying plastic bags, and ran east down the alley; that after the owner of the hot dog stand returned, he walked across the alley toward the Glass House Lounge and then went halfway down the alley to urinate; that while there, a squad car came into the alley and, as it approached, he saw a man run out of the basement past him in a westerly direction toward Halsted; that after the police car stopped, one officer jumped out and fired shots at the fleeing man; and that the other policeman arrested defendant.

OPINION

Defendant first contends that his guilt was not proved beyond a reasonable doubt. We initially note that while a reviewing court will not disturb the jury's determination of guilt unless the evidence is so improbable as to raise a reasonable doubt of guilt (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Smith* (1979), 69 Ill. App. 3d 704, 388 N.E.2d 184), the positive and credible testimony of a single occurrence witness is sufficient to support a conviction (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866), notwithstanding contrary evidence by the accused (*People v. Sullivan* (1970), 46 Ill. 2d 399, 263 N.E.2d 38; *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904).

■■ ■ It is the position of defendant that the testimony of the police officer was so self-contradictory and irreconcilable with fact that it must have been fabricated and, because there was no other evidence of his guilt, defendant urges that we find the officer's testimony so improbable as to leave a reasonable doubt concerning guilt. Defendant refers us to certain portions of the officer's testimony to support his position. First, noting that the officer testified that after hearing glass breaking he cruised at five to six m.p.h. until he saw the fleeing burglars because the distance was only about one-half block, defendant maintains that traveling at that speed it is impossible to travel less than a block in five or six minutes, as testified to by the officer. While it is true that if the police car was traveling at the speed mentioned it would have gone a much greater distance than one block, it appears that the officer's testimony reflects only his estimates of and not precise measurements as to times and distances. From our

consideration of the totality of the circumstances, we believe the variances went only to the credibility of the witness. Second, defendant contends that it is highly improbable that two persons would run toward the police car after burglarizing the drugstore. We note, however, that in addition to his testimony that two men ran toward the police car, the officer also said that they then turned and ran into the alley. Thus, the jury could just as readily have believed that the two men thought their escape would be best accomplished through the alley, which could be reached only by running in the direction of the police car. It is significant that defendant testified that the men he saw burglarize the store also ran down the same alley. Third, defendant urges the improbability that the stolen liquor bottles in the plastic bag which was dropped into the basement stairwell did not break. The record disclosed, however, that the officer did not testify that the bags of merchandise were dropped into the stairwell; rather, he said they were dropped near the underground staircase. In addition, it is not unreasonable to assume that the other items in the plastic bags may have cushioned the bottles when they were dropped—particularly when there appears to have been no testimony as to how far they fell or the manner in which they were dropped. Fourth, defendant suggests that the recovery by the police department of only a portion of the items missing from Walgreen's is further indication that the officer's testimony was fabricated. We see no merit in this conclusion, as the items unaccounted for could have been taken from the store after the time of the break-in and before the store inventory was completed. Furthermore, defendant's brother testified that he saw a number of people going in and out of the store before defendant was arrested and, finally, it is quite possible that other persons could have entered the store while the police were in pursuit of the two men who ran down the alley. Fifth, defendant argues that the failure of the officer to dust the recovered merchandise and the plastic bags for fingerprints suggests a police cover-up, because if the fingerprints had been taken, innocence might have been established. At trial, the police officer testified that the items were not dusted for prints because one of the individuals seen holding the bag was already in custody. The appellate court, in *People v. Mimms* (1976), 40 Ill. App. 3d 942, 944, 353 N.E.2d 186, 188, confronted with similar facts, stated:

> "When the State offers eyewitness testimony, its failure to provide additional evidence in the form of fingerprints to substantiate the eyewitness is unnecessary if that evidence would be only cumulative. (*People v. Hickman* (1973), 9 Ill. App. 3d 601, 291 N.E.2d 872; *People v. Jones* (1964), 30 Ill. 2d 186, 195 N.E.2d 698.) The absence of fingerprint evidence should only affect the weight to be given the identity testimony as a whole and that

determination is for the trier of fact. *People v. Abrams* (1974), 21 Ill. App. 3d 734, 316 N.E.2d 5; *People v. Wooden* (1972), 9 Ill. App. 3d 310, 292 N.E.2d 236."

We believe that the *Mimms* reasoning is applicable here.

■■ Defendant relies on a number of cases in which the reviewing courts reversed judgments because the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. They are not persuasive, however, as they all appear to involve unbelievable testimony; whereas, in the instant case, other portions of the officer's testimony were uncontroverted and even corroborated to some extent by defense witnesses. The officer's testimony as to hearing glass breaking generally coincides with the time of the Walgreen break-in testified to by other witnesses. All witnesses testified to a burglary having occurred, and both defendant and the officer testified that men carrying bags left the Walgreen store and ran east down the alley adjacent to the store. There is no question that the police car followed the men down the alley and that plastic bags containing merchandise taken from the store were later found in the alley near the place of defendant's arrest. Considering the totality of the evidence, we do not believe that the testimony of the police officer is so unsatisfactory or improbable as to leave a reasonable doubt of defendant's guilt.

We next consider defendant's contention that he was deprived of a fair trial when the trial court erroneously sustained State objections to remarks of his counsel during his opening statement. It appears that on four occasions the State objected on the ground that defense counsel was testifying. The first three of these objections were sustained and, after the fourth, the jury was excused, and the trial court informed defense counsel that further comments as to the evidence should identify the witness who was going to give the anticipated testimony.

■ An opening statement should contain an outline of facts which a party in good faith intends to prove and should not be a long, narrative, evidentiary recitation. (*People v. Weller* (1970), 123 Ill. App. 2d 421, 258 N.E.2d 806.) While its scope and latitude is largely within the discretion of the court (*Hughes v. Medendorp* (1938), 294 Ill. App. 424, 13 N.E.2d 1015), the accused has the right to have his attorney present in opening statement the facts which he intends to prove, without unreasonable restrictions (*People v. McDowell* (1918), 284 Ill. 504, 120 N.E. 482).

■■■ It is a general rule that in an opening statement counsel should not be permitted to relate the testimony at length. (*Pietsch v. Pietsch* (1910), 245 Ill. 454, 92 N.E. 325.) There are situations, however, in which detailed references to the facts should be permitted. While we agree with defendant that he should not be required to identify the witnesses who would give anticipated testimony, we believe that when a lengthy

opening statement is made, prefacing comments should be made from time to time by counsel to inform the jury that the remarks were an expectation of what the evidence would show.

■■ Here, we see no merit in the contention of defendant that he was somehow denied a fair trial because the court sustained three objections that he was testifying and, after the fourth objection, excused the jury. It appears that the objections were made during a detailed scene-setting which was of such nature and length that we cannot say that the court abused its discretion in acting as it did. In any event, we see no prejudice to defendant, as his counsel was eventually able to make a full presentation in the opening statement. In the light thereof, we cannot say that there was an abuse of discretion by the trial court.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.