THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LUIS CORA, Defendant-Appellant.
First District (6th Division)   No. 1—90—1864

Opinion filed November 13, 1992.

494

George P. Lynch, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Michael J. Monaco, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

After a bench trial, the defendant, Luis Cora, a school teacher, was convicted of aggravated criminal sexual abuse of one of his students and official misconduct. He was sentenced to 30 months' probation with the first 60 days to be served in the county jail. He contends that he was not proved guilty beyond a reasonable doubt, that his confession should have been suppressed and that the indictment should have been dismissed.

K.P. was a 15-year-old freshman at Lakeview High School in September 1986 through December 1986. The defendant was her biology teacher. She had a class with the defendant five days a week and was his aide during her study periods three days a week. She testified that the defendant had her start sitting on his lap at his desk in October of 1986. He began kissing her in the second week of October; this continued regularly until December 1986.

Their relationship became more serious in December 1986 in the vault, or storage room, adjacent to the defendant's classroom. At this time, the defendant unbuttoned K.P.'s blouse and pulled down her pants and kissed her bellybutton and buttocks. The defendant pulled his zipper down, pulled out his penis and embraced her; his penis eventually touched her vagina. Throughout the incident she was telling the defendant to please stop. She did not have any contact with the defendant outside of class after this incident.

At the end of the 1986 school year, K.P.'s parents moved away and she transferred to Roosevelt High School. She returned to Lakeview in September 1988, her junior year, after she ran away from home and moved in with her grandmother, who resided in the

Lakeview High School district. She saw the defendant her first day back in school and had a brief conversation with him. Her next contact with him was one month later when she attempted to deliver a message to him after class. The defendant was in the vault, and he called out for her. He answered the message and then attempted to coax her over to him; he tried to hug her. After the third contact with the defendant, K.P. went to see her gym teacher, Geraldine Upshaw, for whom she acted as a teacher's aide. At the time of trial, she was about the same height and was about five pounds lighter than she was in 1986. Her hair was a lighter shade of blond in 1986, but she had the same general appearance.

She did not tell her homeroom teacher, the police officer at the school, her friends or her mother about the incidents with the defendant. She did tell another Lakeview teacher in October 1986 that the defendant was making her sit on his lap. At the time of trial she was still in high school and was living with her fiance.

Geraldine Upshaw was a physical education teacher at Lakeview in January of 1989. She testified that K.P. became her teacher's aide and talked to her as a friend. After talking with K.P. on January 17, 1989, she went to the principal and then to the school's social worker.

Youth Officer Donald Muscolino testified that at 8:30 a.m. on January 19, 1989, he telephoned the defendant at Lakeview High School and asked the defendant to come down to the station. The defendant responded that he would "gladly" come down. The defendant arrived at the station at about 10:30 a.m.

Muscolino and his partner, Officer DeBartolo, brought the defendant to their office. Muscolino advised the defendant of his *Miranda* rights, and the defendant said he understood. The defendant did not ask for an attorney and agreed to answer questions at this time.

Muscolino told the defendant that a former student of his alleged that the defendant had taken certain liberties with her. The defendant discussed these allegations with the officers and then gave an oral statement. Muscolino again advised the defendant of his rights. After he finished talking to the defendant between 11 and 11:15 a.m., he called Assistant State's Attorney Anne Kent, who arrived at the station at about 11:30 a.m. Muscolino told her of the allegations of K.P. and the defendant's statement. Kent interviewed K.P. and then the defendant. Kent advised the defendant of his rights. The defendant repeated the statement he had given the police officers. Kent wrote out the defendant's statement and gave

it to the defendant to read. The defendant made a couple of changes to the statement and then signed it.

In his statement the defendant said that K.P. was his teacher's aide in October 1986. She was experiencing family problems and would come to the defendant to talk during or after class. He would kiss her, and she would kiss him on the lips and cheek. He kissed her on the belly button, breasts and on her buttocks. She came to him about three times a week between October 1986 and January 1987. Sometime in December 1986, the defendant undressed K.P. with her help and embraced her in the vault adjacent to her classroom while his penis was out of his pants. K.P. left Lakeview for a year, and after she returned nothing happened.

Because resolution of the issue of the sufficiency of evidence requires consideration of the defendant's confession, we will first address his claim that the confession should have been suppressed.

The defendant testified at the suppression hearing that he had been employed as a biology teacher by the Chicago Board of Education for 13 years. On the morning of January 19, 1989, he received a phone call from Officer Muscolino. Muscolino told him that there was a problem involving a Lakeview High School student, but he refused to tell the defendant the name of the student. Muscolino told the defendant to come down to the station for questioning. The defendant said that he would be through with classes at 3:30 p.m. Muscolino told him that he would have to come down right away or the police would come and get him. After speaking with his principal, the defendant drove to the station, arriving at approximately 10:30 a.m.

The defendant waited for about 45 minutes before Muscolino came and took him to his office. Muscolino asked him if he knew K.P., and the defendant said that he knew her. Muscolino told him that K.P. had stated that the defendant had kissed her, fondled her and placed his penis on her vagina. When the defendant denied these allegations, Muscolino told him that he should cooperate with the police because the whole process would be much easier if the defendant would accept these facts and give a written statement; Muscolino promised to tell the judge that the defendant had cooperated and, considering the defendant's lack of a criminal record, the judge would go easy on him, setting a bond for only $100. After this bond was posted, the defendant would be free to go on with his life and job.

Muscolino then told him that if he did not cooperate, the judge would probably set a very high bond considering the seriousness of

the case. The defendant continued to deny the allegations for about an hour during which the officers kept repeating what Muscolino had said earlier. The officers told the defendant that they were his friends.

The defendant eventually admitted the allegations, stating that he did so because the truth was not getting him anywhere and he thought that admitting these facts would be the only way of getting out of the station and back to his classroom.

The defendant testified that he first saw Anne Kent at about 2:30 p.m. Kent greeted him "very charmingly, very nicely, very warmly." She asked the defendant how he was and he responded that he was nervous. She responded by grabbing each of his wrists and telling him not to worry because everything was going to be fine. The defendant subsequently signed the written statement that was prepared by Kent.

The defendant admitted that he was advised of his rights. The defendant understood the rights, but did not pay much attention to them. The officers did not physically harm him in any way, but the defendant was "mentally scared." He was "scared" because the officers told him that he would get three years of imprisonment. He did not tell Kent about the officers' threats and promises because she did not give him the chance.

The officers and Kent contradicted the defendant. Muscolino and DeBartolo testified that no threats or promises were made to the defendant. Muscolino said that the defendant never denied committing any of the alleged acts.

Kent testified that she wrote out the defendant's statement based on the information the defendant supplied and asked him to clarify or explain certain things as she went along. The defendant signed each page of the statement. He said that there were some errors present; Kent corrected the statement and the defendant initialed the corrections. Kent also said that no promises or threats were made to the defendant. She denied touching the defendant's wrists and telling him "nothing is going to happen to you."

■ No purpose would be served by an analysis of the evidence. Suffice it to say that this case presented a question of fact which was resolved against the defendant. That resolution by the trial judge was not against the manifest weight of the evidence. (See *People v. Poole* (1991), 222 Ill. App. 3d 689, 584 N.E.2d 368.) The principal case relied upon by the defendant, *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50, was an affirmance of the trial judge's ruling suppressing a confession. Like the court in

*Ruegger*, we hold that we must defer to the trial judge's determination of credibility and the weight of the evidence. See also *People v. Perez* (1992), 225 Ill. App. 3d 54, 587 N.E.2d 501.

The defendant also maintains that his statement should be suppressed because it was a product of his illegal seizure. He does not state when he was seized, only that such seizure was done without probable cause. We judge that the fact finder could have concluded that the defendant was arrested after he admitted the allegations that had been made against him by K.P. By this observation, we do not mean to suggest that the police did not have grounds to arrest the defendant on the basis of the allegations made by K.P. We conclude that the trial judge did not err in denying the defendant's motion to suppress his confession.

Our conclusion that the confession was properly admitted leads to the further conclusion that the testimony provided proof beyond a reasonable doubt that the defendant committed aggravated criminal sexual abuse. The cases cited by the defendant, *People v. Rodriquez* (1978), 58 Ill. App. 3d 775, 374 N.E.2d 1062, and *People v. Mixter* (1972), 8 Ill. App. 3d 531, 290 N.E.2d 705, are inapposite. The defendants in those cases did not confess.

We do not agree with the defendant's argument that K.P.'s failure to make an immediate complaint requires a rejection of her testimony. *Rodriquez* and *Mixter* are again not in point. Both cases involved allegations of forcible rape where lack of consent was an issue. Lack of consent is not an issue in this case. Moreover, neither case said that the absence of an immediate complaint rendered the testimony of the prosecuting witness insufficient as a matter of law. In *People v. Moffat* (1990), 202 Ill. App. 3d 43, 560 N.E.2d 352, the principal of a high school was charged with official misconduct and taking indecent liberties with a child after five students had alleged that he committed sexual acts with them. In affirming the defendant's conviction, the court rejected the defendant's argument that the evidence against him was implausible because there was no immediate complaint even though the defendant's sexual conduct with certain students occurred over the span of two to three years. The court stated that in cases like the one before it, "the lack of an outcry or a late complaint may be attributed to fear or embarrassment." *Moffat*, 202 Ill. App. 3d at 54.

The defendant also argues that he reasonably believed that the victim was at least 17 years of age. Under section 12—17(b) of the Criminal Code, "[i]t shall be a defense under *** subsection (d) of Section 12—16 of this Code that the accused reasonably believed

the person to be 17 years of age or over." (Ill. Rev. Stat. 1989, ch. 38, par. 12—17(b).) The two courts which have considered this section of the statute have determined that subsection (b) operates as an affirmative defense. (*People v. Lemons* (1992), 229 Ill. App. 3d 645, 593 N.E.2d 1040; *People v. Brown* (1988), 171 Ill. App. 3d 391, 525 N.E.2d 576.) The defendant is required to produce some evidence at trial to demonstrate the existence of a reasonable belief that the victim was seventeen years old. (*Brown*, 171 Ill. App. 3d at 397-98.) The defendant will be excused from presenting evidence where the evidence presented by the State raises the issue of the affirmative defense. *Brown*, 171 Ill. App. 3d at 397-98.

■ Here, the defendant presented no evidence that he had a reasonable belief that the victim was not 17 years old. Testimony in the State's case clearly established that the victim was 15 years old at the time of the incident; no evidence presented in the State's case suggests that the defendant had a reasonable belief that the victim was 17 years old. The defendant was a high school teacher with 14 years of experience in the Chicago public schools. The victim was a student in his *freshman* biology class. As the State points out, virtually all students begin their freshman year in high school at age 14 or 15. K.P. testified that she looked substantially the same at the time of trial and at the time of the incident. The trial judge was able to observe the appearance and demeanor of K.P. Despite the defense attorney's statement that the victim looked like she was 35 or in her late 20's, the trial judge concluded that K.P. looked "awfully young" to him. We judge that the defendant failed to establish that he reasonably believed K.P. was 17 years of age or older at the time of the incidents.

■ The defendant also maintains that he was not proved guilty beyond a reasonable doubt of official misconduct under section 33—3(b) of the Criminal Code. (Ill. Rev. Stat. 1989, ch. 38, par. 33—3(b).) We agree with the State that the commission of aggravated criminal sexual abuse of a school teacher committed against one of his students during the course of his employment supports a conviction of official misconduct.

In his reply brief, the defendant alleges that the indictment was not properly pleaded. That the defendant raises this issue for the first time in his reply brief does not bar consideration of this issue because "the requirement that an information or indictment charge a crime is jurisdictional." (*People v. Adams* (1978), 64 Ill. App. 3d 547, 548, 381 N.E.2d 738.) If we determine that the indictment is defective, the judgment must be reversed.

In *People v. Samel* (1983), 115 Ill. App. 3d 905, 451 N.E.2d 892, the court stated that the general provisions of the official misconduct statute required that the defendant be a public employee acting in his official capacity. The court stated that subparagraph (b) of the statute contains two additional elements which must be pleaded and proved by the State. "First, the State must allege that defendant knowingly performed an act which he knew he was forbidden by law to perform. \*\*\* Second, the indictment must specify the precise 'law' which the defendant is alleged to have violated in cases of questionable criminal conduct \*\*\*." *Samel*, 115 Ill. App. 3d at 909.

The indictment charging the defendant states that the defendant:

"committed the offense of official misconduct in that he, while employed as a Chicago Public High School Teacher knowingly performed an act which he knew was forbidden to perform [*sic*]; to wit: aggravated criminal sexual abuse, in violation of Chapter 38, section 33—3 of the Illinois Revised Statutes 1985 as amended."

The defendant contends that the indictment fails because it lacks any specific statements as to what particular conduct makes up the predicate offense of aggravated criminal sexual abuse.

■ We judge that this indictment satisfies the *Samel* standard. The defendant relies on *People v. Adams* (1978), 64 Ill. App. 3d 547, 381 N.E.2d 738, and *People v. Campbell* (1972), 3 Ill. App. 3d 984, 279 N.E.2d 123. Neither of those cases supports the defendant's position. In those cases, the appellate court reversed the defendant's conviction because the indictments failed to allege that the defendants knew they were violating the law when they committed the acts in question. In the case before us the indictment clearly states that the defendant knew that he was performing acts which were forbidden by law. Therefore, the indictment was properly pleaded.

■ The defendant contends that the State failed to prove beyond a reasonable doubt that he knew that he was violating a law when he committed aggravated criminal sexual abuse. We reject this argument out of hand without any further discussion.

The defendant's last argument is that the indictment should have been dismissed. First, he claims that no proper foundation was laid for the testimony of Muscolino, who was the only witness before the grand jury. Muscolino testified as follows:

"Q. Did your investigation show that Luis Cora was a teacher at Lakeview High School and age 40 at the time that this was committed?

A. That's correct.

Q. Did your investigation also show that [K.P.] was a student of his, and she was age 15 at the time this offense was committed?

A. That's correct.

Q. Did your investigation also show that Luis Cora, while employed as a school teacher for the Chicago Board of Education fondled and licked the breasts of [K.P.], and he also placed his penis on the vagina of [K.P.]?

A. That's correct.

Q. Did all this occur in the County of Cook, State of Illinois.

A. Yes."

■ There is no denying that the State made a bare-bones presentation before the grand jury. But the sole question is whether the State presented any competent evidence to support the charge. The cases cited by the defendant, *People v. Rodgers* (1982), 92 Ill. 2d 283, 442 N.E.2d 240, and *People v. Linzy* (1979), 78 Ill. 2d 106, 398 N.E.2d 1, simply stand for the proposition that a court has inherent power to review the proceedings of a grand jury. But its review is limited to determining whether there was any competent evidence presented and whether the indictment was the result of prosecutorial misconduct. The defendant's argument is that no proper foundation was laid for the testimony of Muscolino. In other words, the defendant maintains that Muscolino should have testified to the confession that the defendant made to him rather than saying that his investigation disclosed certain facts. In *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793, the supreme court held that an indictment may be based solely on the hearsay testimony of an investigating officer summarizing the events. Moreover, there is no burden on the State to present all available evidence to the grand jury. (*People v. Consago* (1988), 170 Ill. App. 3d 982, 524 N.E.2d 989.) In *People v. Jones* (1960), 19 Ill. 2d 37, 106 N.E.2d 1, the supreme court said that if a witness before a grand jury is competent, his testimony is competent, regardless of whether his testimony is hearsay. Muscolino was a competent witness. We find that sufficient competent evidence was presented to the grand jury to support the indictment.

After Muscolino testified before the grand jury, the foreman asked questions about the charge of official misconduct. The following occurred:

"FOREMAN: Well, his conduct as a teacher prior to this incident doesn't—

[STATE'S ATTORNEY]: O.K.

FOREMAN: (continuing)—Is something that will probably come up in the trial, should you get an indictment, but I was wondering if that's something we might explore here. Is he a bad teacher?

[STATE'S ATTORNEY]: I truthfully don't know that. But to me he has violated the greatest trust you could have in a profession. You know, you send your child to a school and the one person that you are supposed to trust violates her. I think that's what we are looking at. Whenever you see me come in, we deal in a unit that strictly deals with children that are being molested. A Child Sexual Exploitation Unit of the State's Attorneys' Office. And when you have teachers or nuns, priests, day care centers, we have a special unit that only goes out and talks to these kids and talks to the offenders. So I will be a red flag and you will know that it's a school teacher or someone in the public trust."

The grand jurors then retired to deliberate and returned a true bill.

The defendant contends that the remarks of the assistant State's Attorney constituted prosecutorial misconduct and require dismissal of the indictment.

The defendant has cited several cases which stand for general propositions of law governing the relationship between the court and the grand jury. (*People v. Linzy* (1979), 78 Ill. 2d 106, 398 N.E.2d 1 (trial court has inherent power to examine transcripts of grand jury proceedings to determine if prosecutorial misconduct has occurred); *People v. Rodgers* (1982), 92 Ill. 2d 283, 442 N.E.2d 240 (trial court has inherent authority to determine whether indictment is based on competent evidence); *People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 380 (trial court has general supervisory authority over grand jury, subject to some limitations).) The defendant, however, has not cited any case which factually supports his claim here. In *People v. Barton* (1989), 190 Ill. App. 3d 701, 546 N.E.2d 1091, cited by the defendant, the appellate court affirmed the trial judge's dismissal of the indictment based on prosecutorial misconduct. But that case is factually wide of the mark. In that case the prosecutor was guilty of unethical acts and had deliber-

ately misled the grand jury. It is significant that the appellate court noted that the dismissal was justified only because the special prosecutor had misled the grand jury. It would not have affirmed the dismissal if the motion had been made based on the misconduct and unethical acts of the prosecutor. (190 Ill. App. 3d at 708.) In the case before us, the remarks of the assistant State's Attorney were not unethical or misleading. The worst that we can say about her remarks is that they might have been better left unsaid. They surely would not be grounds for dismissal of the indictment.

We turn now to the defendant's claim that the judge held that he lacked discretion in dismissing an indictment based on what happened before the grand jury. The judge said this:

"When a grand jury returns an indictment, the only thing you can show is, if there was one witness only, that that witness was incompetent to testify. You couldn't question the fact that as far as you and I are concerned it didn't add up to a crime at all but the grand jury thought it was.

* * *

Red flag. I kind of feel for your [sic], George [defense attorney], really, but it just—let me put it this way: the Appellate Court is going to have to do it in this particular case because I have always gone on the theory you can't question what they do before the grand jury. If there is one competent witness there, one guy who is mentally—guy or girl—who is mentally sound and she testifies, she may have been led all across the board by the State's Attorney and the State's Attorney, should be perhaps more feeling and understanding that this is a one-sided proceeding and not let all their emotions fly out, but I don't see it, frankly I will tell you. So—."

██ We cannot say that the judge held that he lacked any power to review what transpired before the grand jury to determine whether an indictment should be dismissed. His remarks focus on the question of competency, and they reflect a proper general statement of the law.

The defendant is correct that the trial judge had the authority to review proceedings before a grand jury (*People v. Rodgers* (1982), 92 Ill. 2d 283, 442 N.E.2d 240), but the defendant is not correct that a judge has discretion to dismiss an indictment. Reviewing courts will not examine a ruling on a motion to dismiss an indictment under an abuse of discretion standard. The proper standard on review is whether the judge was correct as a matter of law.

.

We conclude that the judge was correct as a matter of law when he denied the motion to dismiss the indictment.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA* and RAKOWSKI, JJ., concur.

---

*Justice Rosemary LaPorta participated in oral argument before her death. Justice Daniel J. McNamara was substituted on the panel. He has listened to the oral argument tape and has read the briefs.